**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| IN RE THE PARENTING AND SUPPORT OF H.R.H.,[†] | No. 46473-0-II |
| RACHEL M. CHRISP, | |
| Respondent, | |
| v. | |
| MARK C. HEATH, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Mark Heath and Rachel Chrisp are the parents of HRH. Heath and Chrisp were unable to agree on HRH's first name prior to his birth, and Chrisp listed her chosen first name on HRH's birth certificate. Heath appeals the trial court's denial of his request for mediation over HRH's first name and order that HRH's first name would remain the same. Heath argues that the trial court discriminated against him on the basis of his gender, violated his constitutional right to name his child, and abused its discretion. We hold that the trial court did not discriminate against Heath on the basis of his gender, there is no constitutional right to name one's child, and the trial court did not abuse its discretion. Therefore, we affirm.

---

[†] It is appropriate to provide some confidentiality in this case. Accordingly, it is hereby ordered that initials will be used in the case caption and in the body of the opinion to identify the minor involved.

FACTS

Chrisp and Heath discussed HRH's first name before he was born, while Chrisp was in labor at the hospital, and again after HRH was born. The parties could not come to an agreement on HRH's first name. Heath consistently objected to the first name Chrisp favored because he was uncomfortable with the choice. However, Chrisp and Heath agreed on HRH's middle name and surname. Chrisp listed the first name she chose on HRH's birth certificate.

Chrisp filed a petition for a parenting plan and for an order of child support. Heath acknowledged paternity, but raised the issue of HRH's first name in the parenting plan proceedings. Heath asked the trial court to order the parties to engage in "good faith" mediation over HRH's first name.[1] Clerk's Papers (CP) at 12, 14. The trial court entered a temporary parenting plan reserving the issue of HRH's name for trial.

Following a settlement conference, the parties continued to disagree over HRH's first name, and the trial court conducted a bench trial to resolve the issue.[2] At trial, Heath again

[1] In his proposed temporary order of child support, Heath proposed the following procedure to resolve the issue of HRH's first name:

> The parties shall each in good faith provide to the other five potential names for the child within three days of this order. Each party shall then have the right to reject up to four of the names provided by the other party within two days of having been provided the potential names. If the parties cannot agree on one of the two remaining potential names, the matter shall be immediately submitted to mediation. If the parties cannot agree at mediation on a name for the child, the matter shall be noted before the Family Law Department and the Court will select one of the remaining two names on the parties' list of potential names.

Clerk's Papers (CP) at 14.

[2] The trial court also resolved Heath's child support obligation during the bench trial. Heath does not appeal the order of child support.

No. 46473-0-II

requested mediation to resolve the dispute. The trial court denied Heath's request for mediation over HRH's first name and ordered that HRH's legal name would remain the same. Heath appeals.

ANALYSIS

I. STANDARD OF REVIEW

We review a trial court's decisions relating to a parenting plan for abuse of discretion. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012), *cert. denied*, ___ U.S. ___, 133 S. Ct. 889, 184 L. Ed. 2d 661 (2013). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *Katare*, 175 Wn.2d at 35.

II. THE TRIAL COURT DID NOT DISCRIMINATE AGAINST HEATH ON THE BASIS OF GENDER

Heath first argues that the trial court discriminated against him on the basis of his gender. Heath asserts that the trial court improperly denied his request for mediation because no statute allows a mother to choose the first name of a couple's child over the father's objection and the trial court's ruling favored the mother's choice. Therefore, Heath further argues the trial court engaged in gender discrimination.[3] We disagree.

---

[3] Chrisp responds that RCW 70.58.080(8) and RCW 70.58.080(6) required Heath to acknowledge paternity within ten days of HRH's birth, and because he did not do so, Heath does not have a legally valid argument to change HRH's name. However, no Washington statue addresses a parent's authority to choose his or her child's first name over the objection of the other parent. Our legislature has addressed this issue only in relation to surnames. RCW 70.58.080(8). Furthermore, RCW 70.58.080(6), which requires the owner or manager of the institution in which a birth occurred to notify the local registrar of the birth within 10 days, applies only when no physician or midwife attended the child's birth. HRH was born in a hospital. Thus, we review the merits of Heath's argument.

The record shows that the trial court did not deny Heath's request for mediation because of his gender. The trial court began its ruling by stating that HRH was the child's legal name and that Heath's mediation proposal was "essentially a request to order a name change." Verbatim Report of Proceedings (VRP) at 63. The trial court stated that it was "not endorsing any such process" where only a mother has the authority to select the child's name. VRP at 64. Rather, the trial court denied Heath's request expressly because Heath was not denied the opportunity to participate in choosing his son's name and further mediation did not have a realistic chance of success.

The trial court explained, "What occurred in this particular case is that the parents discussed, but could not agree upon each of the three names that were given to this child." VRP at 64. Chrisp and Heath discussed HRH's first name before HRH's birth, while Chrisp was in labor, and after HRH's birth. The trial court found it significant that Heath and Chrisp agreed on a middle name and the surname, but they could not agree on a first name. Heath "did not get his choice of a first name" because "he did not persuade [Chrisp] to go with a different name." VRP at 64. "[T]hat does[ not] mean that Mr. Heath . . . did not participate in the selection of a name." VRP at 64. Furthermore, the trial court reasoned that further mediation would not likely be successful and questioned what "bad faith" mediation would look like in this context. VRP at 65 ("Who is it that would measure and determine whether one party was acting in bad faith? . . . Would continuing disagreement by the parents . . . be the same thing as bad faith?") Thus, the trial court's denial of Heath's request for mediation over HRH's first name was not based on his gender and the trial court did not discriminate against him.

III. WASHINGTON LAW DOES NOT RECOGNIZE A CONSTITUTIONAL RIGHT TO NAME ONE'S CHILD

Heath next argues that the trial court violated his constitutional right to name his child. We disagree because there is no constitutional right to name one's child.

The Due Process Clause of the Fourteenth Amendment protects a parent's right to "autonomous decision making" in child rearing. *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 599, 192 P.3d 306 (2008). Parents have the fundamental right "to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). When the State restricts the exercise of a fundamental right, strict scrutiny applies to our review of State action. *Johnson v. Dep't of Fish & Wildlife*, 175 Wn. App. 765, 775, 305 P.3d 1130 (2013).

Heath cites *Troxel* to assert that he has the fundamental right to name his child. But Heath fails to cite any authority that encompasses a parent's choice of his or her child's first name within a parent's fundamental right to the care, custody, and control of his or her child. No Washington case has held that a parent has a constitutional right to name one's child. Thus, Heath fails to adequately support his argument with controlling case law and his claim of error fails. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) (where a party does not cite authority for a proposition, we will ordinarily not consider it unless it is apparent without further research that the assignment of error is well taken).

IV. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION

Lastly, Heath argues that the trial court abused its discretion in denying his request for mediation over HRH's first name. We disagree for three reasons.

A. The Trial Court Considered the Best Interest of HRH

A party in a paternity proceeding who desires to change the name of his or her child "must set forth the reasons for the change [according to the criteria of RCW 4.24.130]. The [trial] court in its discretion may order a change of the name when found to be in the best interests of the child."[4] *Daves v. Nastos*, 105 Wn.2d 24, 29-30, 711 P.2d 314 (1985). A trial court's final order in a parenting plan petition must contain appropriate provisions for any matter that is in the best interest of the child. RCW 26.26.130(3).

Here, the trial court determined that it would be in HRH's best interest to not change his first name. HRH already had a legal name and the bench trial occurred many months after his birth. Further, HRH shared Heath's surname, and Heath and Chrisp agreed on HRH's middle name. The trial court noted that perhaps HRH might choose to call himself by his middle name or a nickname, but "that will be his choice when he is older." VRP at 66. The trial court acknowledged Heath's discomfort with HRH's first name, but urged him to overcome it "in [HRH's] best interest." VRP at 66. The trial court thus satisfied its statutory duty to fashion a parenting plan that met HRH's best interests.

---

[4] Heath argues that *Daves* does not apply here because this is not a name change case, but he overlooks that this case would have become a name change case if the trial court had ordered mediation. If the trial court had ordered mediation of HRH's first name and the parties subsequently agreed to a new name, the trial court then would have ordered a name change under RCW 4.24.130. In addition, Heath's proposed procedure for resolving this dispute provided that if he and Chrisp could not agree on a new name, the issue would be submitted to a judge who would "select one of the remaining two names" from the parties' proposals. CP at 14. Thus, the trial court correctly noted that this is "essentially" a name change case. VRP at 63.

B. Heath Participated in Naming HRH

Next, the trial court did not abuse its discretion because it recognized that Heath was not denied the opportunity to participate in the choice of HRH's first name. The parties testified that they discussed HRH's first name before and after his birth, but they could not come to an agreement. The trial court explained that "the fact that [Heath] did not get his choice of a first name and that he did not persuade [Chrisp] to go with a different name, . . . doesn't mean that Mr. Heath . . . did not participate in the selection of a name." VRP at 64. The trial court found it significant that although Heath was not successful in persuading Chrisp on a different first name, HRH was given Heath's surname, and he and Chrisp had agreed on a middle name. Based on this history, the trial court did not believe that a formal process through mediation would resolve the dispute. The trial court did not abuse its discretion.

C. The Choice of HRH's First Name Was Not a Future Decision

Lastly, we disagree with Heath's argument that, based on RCWs 26.09.187 and .191, the trial court abused its discretion because no statutory grounds existed to deny him mutual decision-making with Chrisp. RCWs 26.09.187 and .191 provide that, under certain circumstances, the trial court should not require the parents in a final parenting plan to engage in mutual decision-making or require the parents to engage in dispute resolution processes other than court action.[5] But neither

---

[5] RCW 26.09.187 requires the trial court to order sole decision-making to one of the parents when it finds that RCW 26.09.191(1) requires as such, if both parents are opposed to mutual decision-making, or if one parent's opposition to mutual decision-making is reasonable based on four criteria. RCW 26.09.191(1) provides that where the trial court finds a parent abandoned the child, abused the child, or has a history of domestic violence it should not require mutual decision-making between the parents or require the parents to engage in dispute resolution process other than court action.

of these statutes apply to the issue of HRH's first name because that issue was not a future decision that Heath and Chrisp would need to make jointly. As the trial court correctly stated, HRH already had a legal first name; thus, the issue of HRH's first name was not a future decision. Therefore, the trial court did not abuse its discretion in ordering that HRH's first name would remain the same and denying Heath's request for mediation.

We hold that the trial court did not discriminate against Heath on the basis of his gender, there is no constitutional right to name one's child, and the trial court did not abuse is discretion when it denied Heath's request to order mediation over HRH's first name and ordered that HRH's first name would remain the same. Therefore, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
SUTTON, J.

We concur:

_____
WORSWICK, P.J.

_____
LEE, J.