FILED
1/23/2023
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KURT PRASSÉ, in pro se,<br><br>               Appellant,<br><br>    v.<br><br>DR. MARNEE MILNER, DBA MILNER EVALUATION AND CONSULTATION SERVICES INC.,<br><br>               Respondent. | No. 83920-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

PER CURIAM — Kurt Prassé appeals the trial court's dismissal of his claims against Dr. Marnee Milner, the parenting evaluator/investigator appointed by the Whatcom County Superior Court in a separate family law proceeding. Finding no error, we affirm.

I

In April 2019, the Whatcom County Superior Court appointed Milner to "conduct a complete parenting evaluation" of Prassé in connection with establishing a parenting plan for E.P., the child Prassé shares with his former spouse, Sally Von Erffa. In May 2019, the Whatcom County Superior Court entered an additional order further specifying the scope of Milner's appointment and adding an evaluation of Von Erffa. That order directed Milner "to investigate and file a report" on "[a]ll issues related to making a parenting plan for [E.P.],"

including Prassé's criminal history, "[d]omestic violence of [Prassé]," mental health issues of Prassé and Von Erffa, Prassé's physical health, and "[a]ny other issues discovered that could affect the safety of [E.P.]"[1]

Milner performed an evaluation and issued her report in December 2019. She recommended among other things that Von Erffa have sole decision-making authority with regard to E.P., that E.P. reside primarily with Von Erffa, and that Prassé's time with E.P. consist initially of two hours of supervised visitation per week.

In November 2021, Prassé initiated the instant lawsuit against Milner in King County Superior Court, alleging the following claims related to Milner's conduct in connection with her evaluation: (1) breach of contract, (2) fraud in the inducement, (3) libel, (4) breach of fiduciary duties, (5) breach of the covenant of good faith and fair dealing, (6) negligence, (7) malpractice, (8) practicing medicine without a license, and (9) negligent infliction of emotional distress.

In February 2022, Milner filed a motion to dismiss Prassé's claims. Milner argued both that (1) she was entitled to quasi-judicial immunity and (2) Prassé's complaint failed to state a claim on which relief could be granted.

In March, the trial court held a hearing on Milner's motion. At the outset of the hearing, the court observed that Prassé had filed a motion for default but had not properly noted it. The court explained to Prassé, who appeared pro se, "[T]hat's why you don't have a ruling on that."

After the hearing, the trial court granted Milner's motion and dismissed

---

[1] Bold face omitted.

Prassé's claims with prejudice.  Prassé appeals.[2]

II

A

Milner moved for dismissal under CR 12(b)(6).  Dismissal under that rule is appropriate "if 'it appears beyond doubt that the plaintiff cannot prove any set of facts which would justify recovery.' " Didlake v. State, 186 Wn. App. 417, 422, 345 P.3d 43 (2015) (quoting Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998)).  "If the trial court considered matters outside the pleadings" in deciding a CR 12(b)(6) motion, "the reviewing court treats [the] motion as a motion for summary judgment under CR 56(c)." Id.

Here, the trial court considered matters outside the pleadings: Its order granting Milner's motion indicates it was "familiar with the records and files in this matter" and also reviewed, among other documents, Milner's attorney's declaration and the exhibits attached thereto, as well as exhibits that Prassé attached to his response to Milner's motion.  Accordingly, we treat Prassé's appeal from the dismissal of his claims as an appeal from a summary judgment order.

We review summary judgment orders de novo, and "[w]e may affirm on any basis supported by the record." Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).  "[S]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' " Elcon Constr., Inc. v. E. Wash. Univ., 174

---

[2] Milner has moved to dismiss Prassé's appeal based on Prassé's failure to file his opening brief in a timely manner.  The motion is hereby denied.

Wn.2d 157, 164, 273 P.3d 965 (second alteration in original) (quoting CR 56(c)).

B

Prassé contends the trial court erred by summarily dismissing his claims. Milner counters that she was entitled to quasi-judicial immunity therefrom, and thus, dismissal was proper. We agree with Milner.

Reddy v. Karr, 102 Wn. App. 742, 9 P.3d 927 (2000), is instructive. There, a court commissioner appointed an evaluator "to do an investigation and prepare an evaluation to assist the court in determining who should be the child's primary residential parent." Id. at 749. After the evaluator recommended that the father be designated the primary residential parent, the mother sued the evaluator, claiming damages resulting from the evaluator's negligence. Id. at 746-47.

The trial court summarily dismissed the mother's claims, and we affirmed on the basis of quasi-judicial immunity. Id. at 747, 753. In doing so, we explained that "[t]he doctrine of exemption of judicial and quasi-judicial officers is founded upon a sound public policy . . . for the protection of the public, and to ensure active and independent action by individuals charged with fashioning judicial determinations." Id. at 748. In furtherance of this policy, quasi-judicial immunity " 'attaches to persons . . . who perform functions that are so comparable to those performed by judges that it is felt they should share the judge's absolute immunity while carrying out those functions.' " Id. (quoting Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 99, 829 P.2d 746 (1992)). We held in Reddy that quasi-judicial immunity attached to family court

evaluators, who "assist the court to develop such orders as the court deems necessary to resolve parenting controversies." 102 Wn. App. at 749. We observed that such evaluators "act as an arm of the court" when conducting court-ordered investigations that judges cannot themselves independently perform. Id. at 749-50. We also noted that such evaluators "d[o] not have any independent decision-making authority over the parties" and in the end, the court remained "solely responsible" for fashioning a parenting plan. Id. at 750.

Here, as in Reddy, a court appointed Milner to perform an independent investigation and evaluation for the court's use in finding facts and adopting a parenting plan. As in Reddy, Milner had no independent decision-making authority over the parties and "had no capacity" to effect any of her recommendations—that responsibility was solely the family court's. 102 Wn. App. at 750. As an investigator performing a court-ordered evaluation to assist the court in establishing a parenting plan for E.P., Milner acted as an arm of the court entitled to quasi-judicial immunity from liability for her acts taken to complete her evaluation. Accordingly, the trial court did not err by summarily dismissing Prassé's claims against Milner. Cf. Janaszak v. State, 173 Wn. App. 703, 712, 297 P.3d 723 (2013) (immunity from suit "is not merely a defense to liability but 'an entitlement not to stand trial or face the other burdens of litigation' " (internal quotation marks omitted) (quoting Feis v. King County Sheriff's Dep't, 165 Wn. App. 525, 538, 267 P.3d 1022 (2011))).

Prassé disagrees and argues that Reddy is unpersuasive because it was decided "over 20 years ago, in a situation where, contrary to the current case, the

court found it necessary to appoint an investigator to carry on the work of the family court." (Underlining omitted.) He points out that here, he and Von Erffa initiated Milner's appointment. But while Prassé and Von Erffa may have initiated the appointment, it is undisputed that the court ordered it. And in doing so, the court expressly found that "it is in the best interest of [E.P.] to appoint a parenting evaluator/investigator." Prassé's attempt to distinguish Reddy fails.

Prassé next contends that Milner is not entitled to immunity because Prassé formed a contractual relationship with her before she was appointed by the court; he also asserts that Milner fraudulently induced that contractual relationship. But Prassé cites no authority for the proposition that the existence of a prior contract has any bearing on Milner's immunity from claims that even Prassé acknowledges arise from her conduct in connection with a court-ordered evaluation.[3] Furthermore, even if the existence of a prior contract were material, Prassé's assertions that a fraudulently induced contract existed are not supported by citations to the record or any discussion of the relevant legal elements. Prassé's conclusory assertions do not warrant reversal. See Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

Prassé also relies on Gustafson v. Mazer, 113 Wn. App. 770, 54 P.3d 743 (2002), to argue that Milner was not entitled to immunity. But Gustafson was not

---

[3] For example, Prassé asserts that his complaint was addressed to "issues with the entire process: the evaluation process, the findings and [Milner's] recommendations (the final REPORT . . . )."

a quasi-judicial immunity case; instead it analyzed only *witness* immunity for a testifying expert whose involvement "[t]he superior court was unaware of."[4]  113 Wn. App. at 773.  Gustafson does not require reversal.

Finally, Prassé makes a number of policy-based arguments against quasi-judicial immunity.  But his arguments are largely premised on his assertions that Milner violated the law, "clearly did not" use a reasonable degree of care, and engaged in wrongdoing—conclusory assertions that Prassé fails to support with citations to the record.  Furthermore, as explained in Reddy, quasi-judicial immunity itself serves "a sound public policy" of ensuring the independence of judicial and quasi-judicial officers.  102 Wn. App. at 748.

Prassé's arguments against quasi-judicial immunity fail.

III

Prassé advances a number of additional arguments for reversal apart from his arguments that quasi-judicial immunity does not apply.  None are persuasive.

First, Prassé argues the trial court erred by considering Milner's motion to dismiss without first considering Prassé's motion for default.  But the record reflects that the trial court did not consider Prassé's motion because Prassé did not properly note it.  Prassé does not acknowledge this, much less establish that the trial court erred by proceeding as it did under the circumstances.

Second, Prassé contends the trial court erred inasmuch as it did not make any findings of fact or conclusions of law in connection with its dismissal of Prassé's complaint.  This contention fails because "[f]indings of fact and

---

[4] Prassé's policy-based arguments against applying witness immunity, which rely in large part on non-binding out-of-state authorities, are also unpersuasive.

conclusions of law are not necessary . . . [o]n decisions of motions under rules 12 or 56."  CR 52(a)(5)(B).

Third, Prassé argues that the trial court's order "was based on improper procedure" because in her 25-page motion below, "[a]rgument in support of dismissal under CR 12(B)(6) is made on 1 or 2 pages at most," and Milner made arguments at the hearing "not pertaining to the cause for dismissal named in her Motion."  But Milner's motion below plainly sought dismissal on the alternate bases of (1) quasi-judicial immunity and (2) the insufficiency of the allegations in Prassé's complaint.  Prassé does not establish that reversal is required based on the number of pages or amount of time at oral argument Milner chose to devote to each argument.

Fourth, Prassé contends that to the extent the trial court dismissed his complaint on the basis that it failed to state a claim, reversal is required because that dismissal "rest[ed] entirely on the false allegation that there was no contractual relationship between the parties," an allegation that Prassé claims "has been refuted."  But Prassé provides no analysis to support this claim.  He fails to address the elements of a contractual relationship, much less point to evidence in the record to establish a genuine issue of material fact as to those elements.  See RAP 10.3(a)(6) (providing that the argument section of a brief must contain "references to relevant parts of the record"); In re Estate of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998) (court will not assume obligation to comb the record for evidence to support a party's arguments).  And as discussed, he cites no authority for the proposition that the existence of a contract vitiates

Milner's quasi-judicial immunity for claims related to a court-ordered evaluation.

Finally, Prassé attempts to incorporate by reference "additional arguments" from his briefing in the trial court.  But "trial court briefs cannot be incorporated into appellate briefs by reference."  Holland, 90 Wn. App. at 538.  We do not consider Prassé's additional arguments.

We affirm.

_____

Coburn, J.

_____

Dwyer, J.