IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| EVAN JENSEN,<br><br>               Appellant,<br>      v.<br><br>JIM WHITESCARVER, an individual; NAVNEET SUMAN, an individual; DARRYL NEUDORF, an individual; FELIX HSU, an individual, STEVE HENLEY, an individual; LUCIUS MEREDITH, an Individual; STEVE ROSS-TALBOT, an individual; SHIXI LIN, an individual; ERIC MENG, an individual; ED EYKHOLT, an individual; RCHAIN COOPERATIVE, a Washington cooperative association d/b/a RHOVISION; RCHAIN HOLDINGS, INC.; a Washington corporation; RCHAIN PUBLISHING, a Washington social purpose corporation; RCHAIN SOLUTIONS GROUP LLC, a Washington limited liability company; PITHIA, INC., a Washington for profit corporation; PITHIA ONE LLC, a Washington limited liability company; THEO HALLENIUS, an individual, RAO BHAMIDIP ATI, an individual; CAMILA SALKOV, an individual; HENDRIK JAN HILBOLLING, an individual; VLAD ZAMFIR, an individual,<br><br>               Defendants,<br><br>NFP PROPERTY AND CASUALTY SERVICES, INC., a New York corporation,<br><br>               Respondent. | No. 87802-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Evan Jensen appeals the dismissal of his claims against NFP

Property and Casualty Services, Inc. We affirm.

FACTS

In May 2024, Jensen sued NFP and several other entities and individuals. Jensen alleged that he was "significantly involved in the development and management" of a company called RChain Cooperative, one of the defendants. He alleged that "decisions of RChain's board, which Jensen opposed and attempted to reverse, directly resulted in his personal liability," and that "[e]fforts to seek indemnification from RChain and RhoVision," another defendant that Jensen alleged was "a mere continuation of RChain," had been unsuccessful. Jensen asserted the following causes of action: (1) breach of contract, (2) breach of fiduciary duty, (3) failure to indemnify, (4) unjust enrichment, (5) injunctive relief, (6) piercing the corporate veil, and (7) imposition of constructive trust. Jensen's sole factual allegations referring to NFP were that NFP "issued a Directors & Officer's [(D&O)] Policy to . . . RChain . . . under Policy/Binder # B1230FC12995A18 with policy limits of $5,000,000 in aggregate claims with a $125,000 deductible" and that NFP "is a New York corporation which is registered to do business in Washington."

In September 2024, NFP moved to dismiss Jensen's claims against it under CR 12(b)(6) for failure to state a claim. It asserted that although Jensen's complaint alleged claims against RChain and its former directors and officers, the complaint was—apart from the above-described allegations—"utterly devoid of any allegations at all as to what NFP allegedly did or didn't do by way of acts or omissions supporting [Jensen's] various causes of action." For example, as to

2

the breach-of-contract claim, NFP asserted that Jensen's complaint contained "no mention of a contract between [Jensen] and NFP [and] no allegation of a breach of contract by NFP." NFP similarly argued that Jensen did not allege facts to sustain any of his other causes of action as against NFP.

In response, Jensen stated it was "unclear what relationship NFP has with RChain . . . because they will not say." But, Jensen asserted, "[w]hat is clear is that NFP issued a [D&O] insurance policy/binder . . . to RChain." In support, Jensen's counsel submitted a declaration to which he attached a copy of an insurance binder dated October 1, 2018, printed on an NFP form and showing a premium amount of $142,914.48. The binder identified RChain as the insured and "Partner Re Ireland Insurance" as the carrier, and its attached conditions stated, "This Company binds the kind(s) of insurance stipulated on the previous pages."

Jensen's counsel declared that in August 2024, he served discovery on NFP seeking documents related to the policy/binder, and NFP responded by denying it issued a policy. Counsel declared that "NFP has refused to produce any documents explaining its role in providing D&O coverage or the basis for denying coverage to Mr. Jensen," and he asserted that "NFP's discovery responses contradict the plain language of its own binder document." Jensen also provided his own declaration, to which he attached (1) correspondence that he claimed showed that RChain had an obligation to indemnify its directors, and

(2) correspondence evidencing that in 2018, RChain was working with a broker to obtain D&O liability insurance.

In reply, NFP asserted that the court should not consider the new allegations raised in Jensen's and his counsel's declarations because NFP was not seeking summary judgment but, rather, "dismissal because the operative complaint is defective as a matter of law." NFP argued that even if the court considered Jensen's assertions, Jensen's "hunches" that NFP could have played some role in providing D&O coverage "are not claims." NFP also pointed out that the binder identified an entity other than NFP as the carrier.

On January 31, 2025, the trial court held a hearing on NFP's motion. When it was Jensen's counsel's turn to argue, he began by asserting that this "is not a normal policy . . . it's a very hefty policy, with a very hefty premium." The trial court responded, "Well, . . . I can only consider any of that if I convert this to a Motion for Summary Judgment; correct? Because it wasn't alleged in the Complaint?" Counsel responded, "Correct." The trial court then asked, "And so, if I do that, then . . . it's an easier standard for [NFP], right? Because it's a material fact question, as opposed to any set of circumstances." Counsel responded, "Yes." The trial court then asked counsel to clarify what claims Jensen was bringing against NFP. Counsel responded that the claims were breach of contract "[a]nd failure to indemnify as a species of breach of contract . . . [i]f they had a duty to indemnify."

4

The trial court then asked, "So, where is the proof of duty," to which counsel responded, "[W]ell, we're at hypothetical facts." The trial court disagreed, saying, "You wanted to put information into the record. . . . You decided, in response to a Motion to Dismiss to file additional information that you asked the Court to consider. Under the rules, the Court then converts it . . . into a Summary Judgment. So, where in the facts that I have that you put in demonstrates any type of relationship between your client and NFP?" Counsel responded, "The binder, Your Honor." When the trial court asked what the binder had to say about Jensen, counsel responded, "[T]hat R[C]hain had an insurance policy that would have indemnified [Jensen]. He has a right to be indemnified."

The trial court then asked why Jensen hadn't make a claim against the insurance company, and counsel responded, "[T]hat speaks to the ambiguity of th[e] surrounding circumstances," and the trial court interjected, "No, . . . the ambiguity is you file a complaint against 20-some-odd folks, and it appears to the Court that you have not done an adequate investigation into the factual basis upon which your allegations rest. . . . It's not a shoot first, ask questions later situation when it comes to a Complaint. You have a duty under CR 11 to do a reasonable factual investigation, right?" Counsel argued that if he had the policy, "it would be very clear," but that information "is being concealed and held back by a number of corporate Defendants."

The trial court granted NFP's motion to dismiss the breach of fiduciary duty, unjust enrichment, failure to indemnify, injunctive relief, piercing the

corporate veil, and constructive trust claims "because [Jensen] acknowledged they're not bringing these claims against . . . this particular Defendant." As for Jensen's remaining breach-of-contract claim, the trial court converted NFP's motion to a motion for summary judgment and concluded, "[O]n the record before the Court, there are no genuine issues of material fact with respect to the . . . breach of contract/the indemnity that might flow from that. . . . [T]here's just simply no evidence demonstrating any contractual relationship whatsoever between [Jensen] and NFP."

Jensen appeals.[1]

## DISCUSSION

Jensen argues that the trial court erred by dismissing his claims against NFP. We disagree.

We review a trial court's decisions under CR 12(b) de novo. *Didlake v. State*, 186 Wn. App. 417, 422, 345 P.3d 43 (2015). We also review a trial court's decision on summary judgment de novo, engaging in the same inquiry as the trial court. *Rafel Law Grp. PLLC v. Defoor*, 176 Wn. App. 210, 218, 308 P.3d 767

---

[1] Before appealing, Jensen moved for reconsideration, which the trial court denied. Jensen did not designate the order denying reconsideration for review. He also does not assign error to that order or provide any argument that the trial court erred by denying reconsideration. Accordingly, we do not consider the trial court's decision to deny reconsideration. *See Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 2 Wn.3d 36, 50, 534 P.3d 339 (2023) (" '[T]he scope of a given appeal is determined by the notice of appeal, the assignments of error, and the substantive argumentation of the parties.' " (quoting *Clark County v. W. Wash. Growth Mgmt. Hr'gs Rev. Bd.*, 177 Wn.2d 136, 144, 298 P.3d 704 (2013)).

(2013).  "All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party."  *Defoor*, 167 Wn. App. at 218-19.

Jensen first contends that the trial court erred by converting NFP's motion into one for summary judgment.  CR 12(b) provides that if, on a motion to dismiss under CR 12(b)(6) for failure to state a claim, "matters outside the pleading are presented to and not excluded by the court," then the motion "*shall* be treated as one for summary judgment and disposed of as provided in [CR 56]."  (Emphasis added.)  Here, NFP sought dismissal under CR 12(b)(6), and in response, Jensen presented matters outside the pleadings—his and his counsel's declarations and the attachments thereto—for the court to consider.  At oral argument, when the trial court indicated that it could consider those matters only if it converted NFP's motion to a summary judgment motion, Jensen did not object.  To the contrary, Jensen argued that the insurance binder, a matter outside the pleadings, constituted proof of a contractual relationship between NFP and Jensen.  Because the trial court considered matters outside the pleadings, it did not err by converting NFP's motion to a motion for summary judgment.

The trial court also did not err by granting summary judgment.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  CR 56(c).  Here, Jensen claimed that

NFP breached a contractual indemnity obligation to Jensen.[2] To prevail on that claim, Jensen needed to prove that a valid agreement existed between himself and NFP, that the agreement was breached, and that he was damaged. *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 200 Wn. App. 455, 467, 404 P.3d 559 (2017). Yet even when viewed in the light most favorable to Jensen, the record before the trial court established at most that RChain applied for D&O liability insurance in 2018 and that coverage was bound. Jensen made argumentative assertions that a policy was in effect at the relevant time, that NFP had an obligation to indemnify Jensen under the policy, and that NFP breached that obligation. But "argumentative assertions are not sufficient to create a genuine issue of material fact." *Hungerford v. Dep't of Corr.*, 135 Wn. App. 240, 254, 139 P.3d 1131 (2006). Summary judgment was proper.[3]

Jensen disagrees and asserts that the trial court should have granted a continuance to conduct additional discovery. Although CR 56(f) authorizes a court to order a continuance "to permit . . . discovery to be had," Jensen did not request a continuance under that rule. He argues that his counsel's assertion at

---

[2] Jensen does not argue much less establish that the trial court erred by dismissing his remaining causes of action on the basis that Jensen acknowledged he was not asserting those claims against NFP.

[3] Jensen contends that the trial court "misapplied CR 11 standards" by questioning the thoroughness of his attorney's prefiling investigation. But the trial court did not impose CR 11 sanctions, so there is no decision for us to review. Jensen asserts that even without sanctions, the trial court's alleged misapplication of CR 11 improperly influenced its decision to grant summary judgment. But because our review is de novo, the trial court's reasoning is not relevant. *Hood Canal Sand & Gravel, LLC v. Goldmark*, 195 Wn. App. 284, 306 n.8, 381 P.3d 95 (2016).

oral argument that things would "be very clear" if he had the policy, "should have been construed as a CR 56(f) request for discovery." But this was far from a clear request for a continuance, and "[w]here a continuance is not clearly requested, the trial court does not err in deciding a summary judgment motion based on the evidence before it." *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 743, 218 P.3d 196 (2009).[4]

We affirm.

_Dwell, J._

WE CONCUR:

_Coleman, J._          _Mann, J._

---

[4] Jensen also argues that the trial court should have allowed time for discovery under CR 12(b), which provides that when a CR 12(b)(6) motion is converted to a summary judgment motion, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by [CR] 56." But he raises this argument for the first time in his reply brief, so it comes too late to warrant consideration. *Bert Kuty Revocable Living Tr. v. Mullen*, 175 Wn. App. 292, 313 n.15, 306 P.3d 994 (2013) (argument raised for the first time in reply brief comes too late). In any case, Jensen cites no authority for his assertion that this language provides a "mandatory right *to discovery*." (Emphasis added.)